Case 22-5530 Luella Painter v. John Alden Life Insurance Company are due to exceed 15 minutes per side. When you're ready Mr. Morrison you may proceed for the appellate. Good morning your honors. My name is Miles Morrison on behalf of Appellant Luella Painter. I would like to reserve three minutes for rebuttal. Your honors in 1998 Luella Painter purchased a guaranteed renewable long-term nursing care policy from John Alden that included a broadening supportive care and personal care services endorsement. 23 years later Ms. Painter moved into a long-term care facility and sought coverage from John Alden. Now John Alden says that Ms. Painter has buyer's remorse and is trying to get something she didn't pay for here. That is the exact opposite of what's going on in this case. John Alden here has seller's remorse. We're here today because the type of long-term nursing care policy John Alden sold turned out to be a big money loser. And now it's looking for a way to avoid paying the benefits it owes. Now the district court properly rejected John Alden's invitation to ignore the supportive care and personal care services endorsement in the policy and to read an unduly narrow definition onto the term professional nursing care. But the district court still found that John Alden was entitled to a declaration of no coverage at all because the personal care side of the seasons, which is the facility where Ms. Painter resides, doesn't have a registered nurse physically on site 24 hours a day. That's the only reason the district court found no coverage here. The district court's ruling is wrong and should be reversed for three reasons that I'd like to touch on briefly today. First, the seasons is a single facility. It's not two separate facilities. And that single facility has always qualified as a long-term care facility. Are you saying that your main contention is that as long as it's in the same building, then it's covered? If there are two separate buildings, it may not be covered? I don't think it's the building that's dispositive, Your Honor, because there could be a single health care campus where there's one facility. But what we have here is a single parent company, Baptist Convalescent Centers, Inc., I think, that operates one facility called the Seasons at Alexandria. That facility has two licenses from the state of Kentucky. The licenses both list the same location. They list the same, you know, name of the facility. And the only difference in the licenses is what they indicate with respect to the services that license pertains to. So there's a license in the record that's for the personal care home services. But there isn't a separate personal care home, either as a physical building or otherwise. There's just one facility, the Seasons. That's a common way of operating these for the current time, right? So everybody who's got the insurance, if they're in the more limited care, they can collect is what you're saying? Under this particular policy, yes. And frankly, I think that's why, as a practical matter, these policies perhaps have turned out to be such big money losers for the industry and why the coverage is no longer as readily available as it once was. You know, John Alden cites a number of cases from other jurisdictions in its brief that deal with different long-term care policies that have different definitions of the sort of facility that the insured has to live in to obtain coverage or the sort of care the insured has to be receiving. But here, the policy is very clear. It requires that Ms. Painter live in a long-term care facility, and it ticks off the requirements of what that facility is. There's nothing in the policy that says Ms. Painter has to live in the side or portion of the facility that is offering a particular type of services. And that would make no sense in the context of this policy, because John Alden chose to include a broadening supportive care and personal care services endorsement. And through that endorsement, John Alden made clear that the nursing care for which Ms. Painter was purchasing coverage and the type of care she would need to be receiving to qualify for coverage wasn't limited to the sort of skilled nursing care that's provided in a typical nursing home or on the skilled side, as I believe the facilities representative called it, of the seasons. Rather, it includes skilled intermediate and custodial nursing care, which consists of inpatient nursing care provided as needed, even. So even if you have custodial nursing care provided on an as-needed basis, as well as supportive care and personal care services, that is the sort of nursing care that this policy is, on its face, intended to cover. Mr. Morrison, what does the record tell about the composition of the residence in the wing where Ms. Painter lived? I mean, was basically everyone there getting personal care services as that term is defined by this endorsement to the policy? I mean, does the record tell us whether that's true? I don't know that it does so definitively, but there is evidence in the record on that point, Judge Ketledge. The deposition of Dr. Robert Long, who is the CEO of the parent company and operates the facility, includes testimony about who the seasons at Alexandria serves. And one of the things he testified to in response to questioning from opposing counsel was that the seasons doesn't let just anybody in. Regardless of what the regulations require, even on the quote-unquote personal care side, the seasons is only housing people and only admitting people who require assistance with activities of daily living, which is what John Alden's policy uses as the factor for determining whether an individual is a chronically ill individual who's entitled to coverage under the policy. Okay. That's kind of what I was looking for. Yes. You're welcome, Your Honor. And so, you know, for the reasons I've stated and for the reasons set forth in the briefs, we do believe that the seasons is a single facility. And if the court looks at the seasons as a single facility, there is no dispute that it is a long-term care facility as defined in the policy. There's no dispute that it meets all the requirements. I'm sorry. Just to be clear, I mean, as I understand your argument, you've got two wings in this seasons facility. One is doing more sort of RN-type care, and the other is personal care services as defined by the endorsement. And you're saying that it's enough to satisfy this paragraph four of the definition of long-term care facility, which says, you know, it's a place which provides 24-hour per day nursing care under the supervision of an RS. And so you're saying it's enough to satisfy that number four if the facility is providing this 24-hour RN supervision to the other wing, right? I mean, that, in your view, is enough because it is a facility that's providing this. It doesn't say providing it to your client. Am I understanding your argument correctly? That is correct. That is our position, and I think the district court erred in not analyzing the issue that way. The policy doesn't distinguish between, you know, the facility as a whole and the particular side of the facility. But even if the court were to disagree on that point, as the district court did, the district court's ruling is still wrong and needs to be reversed. Why is that? That's because the requirement that Judge Kethledge just quoted is that the long-term care facility provide 24-hour per day nursing care under the supervision of an RN. That is true here for at least a portion of the time period that Ms. Painter has been housed in the personal care services side, even if we look just at the personal care side of the seasons. They claim that they have an RN, but the RN just works about on a one-eight-hour shift a day, and then the rest of the time they don't have any nursing care except in an emergency. They would have somebody come running over from the other section. That's correct. Do you agree with that? I agree with that as a factual matter, but I disagree that the fact that the registered nurse, Michelle Lee, is only physically present during her eight-hour shift, means that the nursing care that's being provided in the personal care wing is not being supervised by Michelle Lee, the registered nurse. Dr. Long testified that she's been hired as the nurse to supervise the nursing care provided in the facility, including the personal care services wing. We did cite some cases in the briefs, and just as a matter of language, supervision is not the same as continuous presence. There are cases, for example, where courts have been tasked with construing statutes about physician licensing, and a physician has to supervise a physician assistant in providing care. Courts consistently hold that doesn't mean the physician has to be in the room or on duty at the same time. The physician has to be monitoring the care, overseeing it, and that's exactly what happened here. Well, it would seem to require at least that the person is on call or available, as opposed to just sort of incommunicado. So is there evidence in the record that either the person who worked the eight hours or someone else was 24 hours available to supervise, basically? I mean, I read that it says provide 24-hour per day nursing care under the supervision of an RN. I mean, under the supervision is modifying the care, so the care has to be under the supervision 24 hours. So what do we have in the record about the other 16 hours in terms of how these folks in the personal care side are being supervised? Well, as an initial matter, I disagree with the construction of that provision. I read supervision to modify nursing care, and I also read 24-hour per day to modify nursing care, but I don't read supervision to modify 24-hour per day. And again, I don't think... Well, let's just say, you know, that it means what I was suggesting. So there's really a question about the record. Yeah. So what does the record tell us? So I don't think the record is particularly clear on that point, other than that there is also a medical doctor who is on staff at the facility. I don't think the record establishes the hours during which the doctor is available. I don't think the record establishes one way or another, and this was not explored in the district court because the case was presented at the summary judgment stage. I don't think the record establishes one way or the other, you know, as a factual matter, whether, you know, all of the licensed nurses and aides on the personal care side had the cell phone number of the registered nurse and could call her at any time of the day. Could a jury even find, though? That's kind of what I'm getting at. I mean, could a jury even find that there was some kind of not in-person supervision going on for the other 18 hours? Or is there just an absence of evidence on that point? I think a jury could find that based on the record and based on the evidence about the general supervision of the facility by a doctor and the supervision by the nurse. I mean, it would be for the trier of fact to determine what Dr. Long meant when he spoke of Ms. Lee, the registered nurse, supervising the nursing care on the personal care side of the facility. I see that I'm out of time, so unless there are other questions, I'll save the rest of my time for rebuttal. There are not. Thank you, Your Honor. Thank you. May it please the Court, my name is Ginger Busby and I represent John Alden. Your Honors, the district court properly found that John Alden did not owe coverage under the policy for the reasons he said and there are also other reasons in the record as to why there's not coverage for Ms. Painter under this policy. I want to address initially the question that the court had about the facility. It is absolutely incorrect to say that as long as there is one building, one campus, one facility, whichever word that you choose to use, that the facility is then licensed to provide the care that is covered under the policy. This is one building, is that what it is? And it's got two wings or two corridors and everybody on one side is in the long term and everybody on the other side is help but not long term. Well, yes, sir, from the description from Mr. Long and his deposition and from the website, which we've had a picture of at the deposition, it is two wings, I guess is how I would describe it. It also has more than one floor. So a lot of these facilities now, if you're familiar, this policy really is what you would have called back in the day a nursing home policy. The name for a nursing home has changed over the years. It's changed under different regulations for states. To be kinder, sometimes it says nursing care, sometimes skilled care facility, generally under the regulatory, guys, people call it long term care. What happened is that that requires both through policies and statutorily specific requirements. So as an example, in Kentucky, for nursing care in a long term care nursing facility, they must have registered nurses 24-7. So it's not just you have to be providing nursing care. A registered nurse is called and is defined in this policy specifically, while not all policies, a registered professional nurse. That is where the term professional nursing care comes. It is insufficient that an aide be doing personal care in a personal care home. Is that the same thing as an RN or is this a different kind of a nurse? An RN, as is, by most state statutes, but under this policy, described as a registered professional nurse. So that's what is described in this policy. I didn't mean to interrupt you, Judge Kethledge. Did you have a question? No, not at all. I didn't mean to interrupt. I don't want to interrupt Judge Tyler's questioning. You didn't interrupt. Gene, are you still questioning? I already got the answer. All right. Well, Ms. Busby, in this case, we're interpreting the policy, and thankfully not a state licensing regime. That's just a joke. I'm not intimating anything. I understand. And the policy has this endorsement for long-term nursing care that says it applies to personal care services. And that's apparently what the folks on Ms. Painter's side of the building are getting. So I guess I just don't really understand the import or why the licensing, licensed nature or not, that care is relevant to the policy meaning. All right. So if you look at the definition of long-term care facility, and then you also have to separately look at the definition of care, you have to be licensed to provide the services that the insured is receiving. So if you're only licensed to provide personal care services, which is the case here, then it is very clear you are not getting nursing care or professional nursing care. And that is how the license plays into a policy. You have to understand. Okay. But, I mean, in this case, we're not determining whether the care she's receiving fits within your definition. It's just not really disputed is my sense of the briefs. What we're determining is whether the seasons meet the definition of facility. And that, you know, that seems to turn on this number four requirement. All right. Well, let me say one thing. It is absolutely disputed. And in our brief, we say that the district court erred in determining that professional nursing care was provided. And, in fact, I think that he absolutely erred. And so let me go to the endorsement and maybe try to help you. What the endorsement does, look at subparagraph J of the definition. So if you're looking at the policy and its own, I think, just for the record, maybe I can think of. Personal care services is defined, isn't it, as like, you know, help with bathing and washing and brushing teeth and grooming and that kind of thing. No, sir. Look at, and the endorsement goes with J, which is on, the record is 24-1, page 267. Long-term nursing care means qualified long-term care services performed in a long-term care facility. So then you look at the endorsement to see what is added. And this is extremely important, and I think it will help you. What is added is to say long-term nursing care under definitions means this. Skilled intermediate and custodial nursing care consists of inpatient nursing care provided on an extended and continuous basis or as needed. Okay, let me stop there. The personal care home where Ms. Painter resides can provide none of those things. That is by testimony of Dr. Long. Let's go on to the end and tell us what that means. Well, let's please do. It says as well as. What does as well as mean? Both in all the dictionaries. It means that's included as well, supportive care and personal care services. It means in addition to. As well as means in addition to. So what that means is you have to get this, and in addition you can have personal care. It doesn't mean that just personal care is covered. It's very clearly written. That is why when you look at the word continuous and 24-hour. Well, I don't know about that. I understand your argument myself. I mean, I get it, but I'm not so sure that's clear. I guess if you can just sort of bear with me hypothetically, I suppose. Let's say we disagree with you on that, and we conclude that because of this endorsement that personal care services meet the definition of the kind of care that's covered, and now we have to determine whether the seasons is the kind of facility that's covered. And we look at numbers. I mean, it says it's a place that does a number of things, and one of those things is provide 24 hours per day nursing care under the supervision of an RN. And we've got one wing with RN type stuff going on and another wing with personal care, but that falls within the care covered. Why isn't this a place that does provide this 24-hour nursing care under the supervision of an RN? I mean, it's happening at this place. It's a facility determination, and it doesn't say that she has to be herself getting that particular care. That's incorrect. You have to get the care. You can't just take one part of the policy and say, voila, you're covered. I said she actually has to get the nursing care. You have to read the policy as a whole. And to answer your question about 24-hour care, I'm happy to answer your question. The record is very clear. I asked in two different places three different times, can you provide nursing care, professional nursing care, in or to Ms. Painter in the personal care home? The answer is no. They're not allowed to do it, number one. Number two, three different times they filled out facility questionnaires asking the question, do you have a registered nurse eight hours a day? There's a chart that goes across in the facility questionnaire. Okay, well, I understand. Okay, and that's very helpful, really. You're telling us that, hey, a jury could not find that there is this 24-hour RN supervision going on in Ms. Painter's wing. I understand what you're saying. But my question was a little different. My question is, this is a determination about the facility. The facility does provide this 24-hour RN care. This facility definition doesn't say she has to be getting that kind of care. It's just that this facility provides it. And that's their argument, and I'm just wondering why that isn't a fair reading of this facility definition. Because you're not reading the entire policy when you say that, with all due respect. I mean, what the policy says is that you have to be receiving long-term qualified care in the long-term facility that provides that care. And so when you read those two provisions together, there's no way that Ms. Painter can receive the care that the policy covers sitting in the personal care side of the seasons. And just to finish what I was saying earlier, because I want to be clear about this, there is. Let me just interrupt you. I'm sorry. So you are referring to, in the benefit provisions, a long-term nursing care benefit. We will pay the daily benefit if. And number two is you are receiving long-term nursing care pursuant to a plan of care prescribed by a licensed healthcare practitioner while confined in a long-term care facility. So you're saying there's a distinction between, but you have to have both, being confined in and also receiving. Yes, ma'am. Okay. Because you can't. And the record is very clear about this from Mr. Long, who testified. And if I can say, while the last form was filled out with a one, saying they had a registered nurse for eight hours, they produced the employment record of the personal care facility. And there is not a registered nurse employed by the personal care facility. So if you are thinking about this in terms of if you own a business and you have somebody who's like the manager, what became clear in the deposition of Mr. Long is that they had assigned this woman to some management overseeing, I guess, you know, information. But she was not employed by the personal care side. She's not on their employment list. And so with all due respect, I don't even really think they have somebody eight hours. But we took the record, taking a contradiction of the information from the facility, and applied it to this case and said, okay, if you look at it, that they have somebody there one time, eight hours, that still does not meet the 24-hour-a-day nursing care under the supervision of an RN. Does this facility charge different prices for the distinction in one wing or the other according to how much personal care there is? Absolutely. And it's in the record that Ms. Painter entered into a contract with the personal care side for specific types of care. And if you are going into the skilled nursing or nursing care side, you have to have, you must need significant nursing care on a regular basis. Well, you're charged more. Oh, you're charged significantly more. And the facility, I guess, bills the state on indigent people differently. If the facility covers Medicaid, Medicare-covered patients, which based on the deposition of Mr. Long, I believe that it does, then they have to pay a certain amount, and then private pay pays a certain amount, you know, through whatever amount you do it. When you're on the personal care side, and I think this is extremely important. When you buy a policy, and this is in the record, you can buy a nursing care, the old nursing home policy. You can also buy coverage for home health, which would be an outside agency to come in to help with ADLs, which is allowed at this facility. You can also buy an assisted living policy. And I want to be very clear to say, if you looked at the definition of what's excluded, a residential care home is excluded under this policy, that is akin to what a personal care home is in the state of Kentucky. If you look at what, you know, they provide, educational, those type things, it really is not anything that would be covered under this policy. So you could affirm, not only on the basis that the district court found, you should affirm because they're, as Mr. Long said, they cannot provide professional nursing care, you should affirm because she's not chronically ill. That is also in the record. You cannot have coverage under this policy whatsoever unless you can meet the chronically ill definition of the policy, and that's in this record as well. And all you have to look at is what the seasons provided as their assessment and what they were giving. She gets help with bathing twice a week, nothing else. You must have at least two, require two assistants with ADL. So you could approve for that reason as well. And I apologize my time is up. If there's no other questions, I thank you for your time. There are none. Thank you. Thank you. Rebuttal. Thank you, Your Honors. Just a few brief points I'd like to address. First, Ms. Busby suggested that the court may not be reading the policy as a whole, and I would respectfully suggest that Ms. Busby is the one who is not currently reading the policy as a whole. If you start at the benefit provision, part three, we will pay the daily benefit for long-term nursing care. There can't be a serious dispute that Ms. Painter is receiving long-term nursing care as defined in the policy, as extended by the endorsement. She is receiving supportive care and personal care services, and she is also receiving custodial nursing care provided on an as-needed basis. The suggestion that Dr. Long testified that the personal care side of the seasons does not provide nursing care is not correct. He said that, you know, it depends how he was asked if he agreed with that statement, and he said, well, you know, it depends how broad of a definition of nursing care or professional nursing care you use. This policy uses an extremely broad one by the endorsement, and I've yet to hear any explanation for what that endorsement would do or what additional coverage it would provide. If it doesn't, expand long-term nursing care and provide coverage in some situations where an insured is receiving these sort of additional services and help with activities of daily living. Second, looking at the- Well, Mr., it's Morrison, right? Yes, yes, it is. Okay, thank you. Mr. Morrison, Ms. Busby is arguing that as well as supportive care and personal care services language in the endorsement, that those things she's suggesting do not stand on their own bottom as long-term nursing care. They're instead like throw-ins or something if the person is already getting this more skilled nursing care. And so what's your response to that? So I think that can't be correct if you look at definition M, which is the original definition of qualified long-term care services, which already includes those sort of kind of ancillary maintenance and personal care services. So if the endorsement's doing anything, it's adding them independently. But even under Ms. Busby's view, there's long-term nursing care being provided under the endorsement because consistent with Dr. Long's testimony and the facilities questionnaires that were filled out in the other medical documents in the record, Ms. Painter is and has been receiving custodial nursing care on an as-needed basis as well. The point that Ms. Busby made about the employment list of the facility and that somehow being dispositive, again, I don't believe the record supports that. The testimony was that Dr. Long asked somebody who worked in the main office to put together a list of the nurses and the personal care side. It's not an official record of who's getting paid by who. There's nothing in the record to even indicate that the entities are paid separately. And, in fact, to Judge Seiler's question, CMS uses the same provider number for the facility. There's just one CMS provider number, even if there are different rates. I see I'm out of time. If it may please the court, I would like to just respond briefly to the point about Ms. Painter not potentially being a chronically ill individual. That's not a basis to affirm. It's not something the district court reached. But it's also demonstrably incorrect. John Alden, in fact, acknowledged, based on facilities questionnaires that have the very same boxes checked, showing that Ms. Painter needed hands-on assistance with bathing and standby assistance with all of the other listed activities of daily living. They had those documents in their possession and acknowledged in August of 2020 that Ms. Painter did, in fact, qualify as a chronically ill individual. And from a timing standpoint, Dr. Mattel, the facility's doctor, certified her on May 11, 2020 as a chronically ill individual. John Alden says the policy requires recertification every 12 months. We disagree. I believe they've waived that requirement by telling Ms. Painter there's no coverage for the facility and you might want to get recertified if you move to a different facility. But, in any event, the certification is good from May of 2020 to May of 2021. And so there is no dispute on this record that Ms. Painter, in fact, qualifies as a chronically ill individual. She required substantial assistance, which means standby or hands-on assistance, if you Google it and also in the Medicare regulations, with at least two activities of daily living at all times. And she was certified at a minimum for that 12-month period, May 2020 to May 2021. And so whatever dispute there may be about whether she continued to qualify after that point as a chronically ill individual is not a basis to affirm the district court's finding that she doesn't get any benefits at all. Thank you, counsel. The case will be submitted.